UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| THOMAS M. HANDZLIK, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:13-CV-119 JD |
| | ) | |
| DAVID LAIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Thomas M. Handzlik, a *pro se* prisoner, is proceeding on numerous claims regarding the conditions of his confinement at the Porter County Jail. (DE 15.) The defendants move for summary judgment on the ground that Handzlik failed to exhaust his administrative remedies before filing suit as required by 42 U.S.C. § 1997e(a). (DE 87, 90.) Defendant Michelle Harris also moves for dismissal based on Handzlik's failure to state a claim against her. (DE 87 at 2-3.)

**I.     Failure to State A Claim**

The court first addresses Harris's request for dismissal based on failure to state a claim. (DE 88 at 15-20.) In deciding a motion to dismiss for failure to state a claim under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), the court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Golden v. State Farm Mut. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014). To survive dismissal, a "complaint must contain allegations that state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). "This means that the complaint must contain allegations plausibly suggesting (not merely consistent with) an

entitlement to relief." *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (internal quote marks and citation omitted). Nevertheless, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Harris argues that she should be dismissed as a defendant based on Handzlik's "failure to state a plausible claim" against her in his complaint. (DE 88 at 15.) Despite the terminology she uses, her argument is actually based on outside evidence; she responds to various allegations in the complaint and argues that in light of the evidence (specifically, her 9-page affidavit and Handzlik's medical records from the jail), he has not established that she was deliberately indifferent to his medical needs. (*See* DE 88 at 16-19; *see also* DE 88-5, Harris Aff. & Exhibits.) That is not a proper argument for a motion to dismiss based on failure to state a claim. Rather, as outlined above, the court must accept the plaintiff's allegations as true and construe all inferences in his favor at this stage. *Golden*, 745 F.3d at 255. Furthermore, the court cannot consider outside evidence in deciding whether the complaint fails to state a claim. FED. R. CIV. P. 12(d). Accordingly, the court expressly excludes Harris's outside evidence, and considers only the allegations in the complaint in deciding whether Handzlik adequately states a claim.

Inmates are entitled to adequate medical care under the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as

mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Although the Constitution does not entitle an inmate to demand a specific form of treatment, prison medical staff cannot deny all forms of treatment or continue with a course of treatment that is known to be ineffective. *Greeno*, 414 F.3d at 654-55. Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Here, Handzlik alleged in his amended complaint that when he arrived at the jail, he was suffering from serious mental health problems, including obsessive compulsive disorder and panic attacks which had been diagnosed and treated prior to his incarceration. (DE 4 at 9.) He further alleged that his mental state deteriorated after he arrived at the jail, and that he made several requests to see a therapist. (*Id.*) He alleged that Harris ignored his requests for several months, and in one instance had him placed in a "padded cell" for complaining about his medical care, even though there was no legitimate medical reason for doing so. (*Id.*) Accepting these allegations as true, he has alleged a plausible deliberate indifference claim against Harris. Accordingly, the court declines to dismiss her as a defendant.

**II.     Exhaustion**

Turning to the issue of exhaustion, summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Nevertheless, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in her own pleadings, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The U.S. Court of Appeals for the Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the

---

[1] The court notes that outside documents can properly be considered in connection with the defendants' request for judgment under 42 U.S.C. § 1997e(a), since exhaustion is an affirmative defense on which the defendants bear the burden of pleading and proving. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (affirmative defense must be litigated in a motion for summary judgment rather than a motion to dismiss, since "the existence of a defense does not undercut the adequacy of the claim").

place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. In determining whether an administrative remedy was effectively unavailable, the question is whether the inmate did "all that was reasonable to exhaust" under the circumstances to exhaust. *Id.* at 812; *see also Schultz v. Pugh,* 728 F.3d 619, 621 (7th Cir. 2013) (plaintiff must demonstrate that a person of "ordinary firmness" would have been deterred from exhausting under the circumstances). When there are disputed issues of fact pertaining to whether the plaintiff exhausted or was precluded from doing so, the court is required to hold a hearing to resolve those disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Here, Handzlik tendered his original complaint for mailing on April 4, 2013. (DE 1 at 10.) He raised a host of allegations about improper medical care, improper food, improper clothing, and a lack of sanitation at the jail, among other issues. (*Id.* at 1-10.) However, his filing

5

was unduly vague and confusing in certain respects, and he was afforded an opportunity to replead his claims. (DE 3.) On April 19, 2013, he tendered his amended complaint for mailing. (DE 4.) In this filing he complained about many conditions at the jail, including sewer gas smells; infestation of ants, gnats, and other bugs; overcrowding; inadequate jail-issued clothing; an inadequate amount of toilet paper; inadequate food, including spoiled and improperly cooked foods; an inadequate mattress; and a lack of sanitation. (*Id.*) He further claimed that he was not receiving adequate medical care for mental health issues, and that jail staff improperly denied him access to religious books. (*Id.*) Handzlik was granted leave to proceed against defendants David Lain, John Widup, Robert Taylor, Diane Patrick, Tom Baker, and Michelle Harris in connection with these claims. (DE 15.)

The record shows that Handzlik was housed at the jail from October 2012 to April 2014, when he was transferred to an Indiana Department of Correction facility. (DE 1 at 7; DE 98.) At all relevant times, the jail had a grievance process in place under which an inmate could grieve a broad range of issues, including the actions of jail staff, living conditions, health care, food, mail, laundry service, and jail polices. (DE 88-4, Gaydos Aff. ¶ 5 & Ex. 2, Standard Operating Procedure 02-05(I)(B) ("Grievance Policy").) Under the policy, an inmate is encouraged to informally resolve his complaint by speaking with a member of the jail staff. (DE 88-4, Gaydos Aff. ¶ 5.) If the inmate is dissatisfied with the response, he must file a formal grievance. (*Id.*) Grievance forms can be obtained from the pod officer assigned to the unit where the inmate is housed. (*Id.*) Completed grievances are forwarded by the pod officer to the shift supervisor, who responds to them or, if necessary, forwards them to the appropriate personnel (such as medical staff where the grievance pertains to a medical issue). (*Id.*) An inmate must file a written

grievance within 7 days of the event or issue about which he is complaining. (*Id.*) If dissatisfied with the response, the inmate can appeal to the jail commander. (*Id.* ¶¶ 6-7.) This must be done within 7 days of when he receives the grievance response. (*Id.* ¶ 6.) Appeal forms are also available through the pod officers. (*Id.* ¶ 9.)

All new inmates at the jail are made aware of jail practices and procedures, including the grievance process, through an orientation video. (*Id.* ¶ 11.) They are also given a personal copy of an inmate guide which contains information about jail procedures, including the grievance process, and are provided an opportunity to ask questions. (*Id.* & Ex. 4, Inmate Guide.) Handzlik was shown this video and received the materials on November 2, 2012. (DE 88-4, Gaydos Aff. ¶ 11 & Ex. 3, Classification Form.) A record is kept of all inmate grievances and appeals, and those records show that during his time at the jail, Handzlik filed many grievances pertaining to his food, overcrowding, problems with his mail, a shower being plugged up, a correctional officer calling him names, his mattress, and problems with his cell mate, among other matters. (*Id.* ¶ 16 & Ex. 5, Grievance Log.) However, the earliest of these grievances was recorded on April 15, 2013. (DE 88-4, Gaydos Aff. ¶¶ 16-20; DE 88-4, Grievances at 48, 51.)

Based on these facts, the defendants request dismissal pursuant to 42 U.S.C. § 1997e(a). (DE 87, 92.) As they point out, an inmate must exhaust *before* bringing his lawsuit, and efforts to exhaust while the case is pending do not satisfy 42 U.S.C. § 1997e(a). *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("exhaustion must precede litigation"); *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (compliance with 42 U.S.C. § 1997e(a) is a "precondition to suit"). For exhaustion purposes, an inmate is deemed to have "brought" the action on the date when his complaint is tendered for mailing. *Ford*, 362 F.3d at 400. Handzlik

7

brought this action on April 4, 2013. (DE 1.) His grievances filed on April 15, 2013, and later therefore would not satisfy the exhaustion requirement.

Handzlik filed an opposition to the motion, and he raises various arguments in response to the exhaustion issue. (DE 95.) The bulk of his arguments are unavailing. As a preliminary matter, Handzlik complains that Ron Gaydos, the Porter County Jail Commander (and previously Assistant Warden), submitted an affidavit in support of the defendants' motion. He believes this is improper because Gaydos is not a defendant. (DE 95 at 2.) His argument has no merit. The FEDERAL RULES do not prohibit evidence from non-parties; instead, an affidavit is proper as long as it is based on personal knowledge, sets forth facts that would be admissible in evidence, and pertains to matters on which the affiant would be competent to testify. *See* FED. R. CIV. P. 56(c)(4). Gaydos' affidavit pertaining to jail grievance procedures and records satisfies these requirements.

Handzlik also suggests that he did in fact adequately exhaust before filing suit, but it appears he is referencing letters and medical request forms he sent to prison staff in which he complained about his medical care, his clothing, his blanket, and other matters. (DE 88-4 at 41-51; DE 88-6 at 1-11.) However, the Seventh Circuit takes a "strict compliance approach to exhaustion," *see Dole*, 438 F.3d at 809, and letter-writing or other actions taken outside the grievance process are no substitute for compliance with the prison's formal grievance process. *Pozo*, 286 F.3d at 1025. Accordingly, these documents do not demonstrate compliance with 42 U.S.C. § 1997e(a). Handzlik also argues that he has meritorious claims pertaining to the

8

conditions at the jail.[2] (DE 95 at 4.) This may be true, but the court cannot reach arguments regarding the merits until first deciding whether the plaintiff exhausted his administrative remedies. *See Perez*, 182 F.3d at 536 (district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)").

Nevertheless, one of his arguments bears closer consideration. Handzlik appears to claim that jail staff threw away some of the grievances he filed or otherwise failed to document them, so as to purposely interfere with his ability to exhaust. (DE 95 at 1-2.) Under the applicable law, Handzlik could be excused from failing to exhaust if the grievance process was effectively unavailable to him. *Kaba*, 458 F.3d at 684; *Dole*, 438 F.3d at 809. At present, however, Handzlik has offered only vague assertions about the defendants' actions, and an inmate must offer specifics about his attempts to exhaust to create a genuine issue of material fact. *See Schultz*, 728 F.3d at 620 (since prisoner failed to set forth specifics about why he was unable to exhaust, summary judgment for the defendants was proper); *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004) (plaintiff who offered concrete details in a sworn statement submitted enough to defeat summary judgment, whereas vague assertions are not sufficient to create a genuine issue of fact on exhaustion issue). Here Handzlik does not provide specifics, most notably, the relevant dates when he filed grievances that he believes were mishandled or thrown away. Further, his

---

[2] Handzlik also points out that his former cell mate, George Bray, filed a similar suit about the conditions at the jail. (DE 95 at 3.) He asserts that he and Bray filed similar grievance documents; in his view the defendants' exhaustion argument is undercut by the fact that no one has moved for dismissal of Bray's complaint on exhaustion grounds. (*Id.*) What occurs in another inmate's lawsuit is not determinative, but the court notes that there are presently two motions for summary judgment pending in Bray's case based on lack of exhaustion. *See Bray v. Lain*, No. 2:13-CV-129-PS (N.D. Ind. filed April 15, 2013), DE 97, 99.

statements are not submitted in the form of an affidavit or otherwise made under penalty of perjury.[3]

Nevertheless, the court is cognizant that Handzlik is proceeding *pro se*, and he expresses some confusion about how to properly respond to the motions. (DE 95 at 1.) What he has filed indicates that he may be able to establish an issue of fact requiring a *Pavey* hearing, but more detail is needed about the date or dates when he tried to invoke the grievance process, to whom he gave these grievances, how they responded, and precisely what actions he took to exhaust before he brought this action. If he did not take reasonable and timely steps to invoke the grievance process before filing suit, then he did not properly exhaust in accordance with 42 U.S.C. § 1997e(a) and his case must be dismissed. *See Pozo*, 286 F.3d at 1025 (inmate must comply with time deadlines to properly exhaust); *Dole*, 438 F.3d at 809 (inmate must show he did "all that was reasonable to exhaust" under the circumstances to be excused from exhaustion requirement).

When a party has failed to adequately support an assertion of fact in connection with a motion for summary judgment, the court has discretion to afford the party an opportunity to properly support that fact. *See* FED. R. CIV. P. 56(e)(1); *see also Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1109 (7th Cir. 2014) (observing that "trial courts have considerable discretion in managing the course of litigation. . . . and this is no less true in the context of summary-judgment motions"). In the interest of justice, and in light of Handzlik's *pro se* status, the court will grant him an opportunity to submit a sworn declaration or affidavit providing additional detail about his efforts to exhaust. The declaration or affidavit must address the

---

[3] Despite his *pro se* status, Handzlik appears quite familiar with the process of preparing a declaration, as he submitted several of them during the pendency of this case. (*See* DE 60, 61, 62, 63, 64, 83.)

specific issues identified below. He may provide other details pertaining to his efforts to exhaust that he believes are relevant to the court's consideration. He may also submit any documentation he has in his possession or can obtain pertaining to his efforts to exhaust the grievance process.

For the reasons set forth above, the plaintiff is **GRANTED** to and including **June 30, 2014**, to submit a sworn declaration or affidavit addressing the following issues:

(1) the date(s) when he first attempted to invoke the jail's formal grievance process;
(2) what specific actions he took to file a grievance on the above date or dates;
(3) what specific issues he raised in those grievances(s);
(4) to whom on the jail staff he gave his completed grievance(s); and
(5) the response(s) of jail staff, if any.

The defendants are granted to and including **July 21, 2014**, to file a response to the plaintiff's submission. The defense motions (DE 87, 90) seeking dismissal under 42 U.S.C. § 1997e(a) are **TAKEN UNDER ADVISEMENT** pending further ruling. However, the request of Defendant Michelle Harris for dismissal pursuant to FED. R. CIV. P. 12(b)(6) is **DENIED**.

SO ORDERED.

ENTERED:  May 22, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court